UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                    No. 96-4127

RUDDY A. FABIAN DE CEDENO,
Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
Robert R. Merhige, Jr., Senior District Judge.
(CR-95-78)

Submitted: December 19, 1996

Decided: January 3, 1997

Before ERVIN and MOTZ, Circuit Judges, and BUTZNER,
Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Robert J. Wagner, WAGNER & WAGNER, Richmond, Virginia, for
Appellant. Helen F. Fahey, United States Attorney, Stephen W. Miller, Assistant United States Attorney, Richmond, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Ruddy Fabian de Cedeno pled guilty to possession of more than fifty grams of crack cocaine with intent to distribute, 21 U.S.C.A. § 846 (West Supp. 1996), but reserved his right to appeal the district court's denial of his motion to suppress evidence seized from him at arrest and statements he made shortly afterward. De Cedeno now appeals that order and his 135-month sentence. We affirm.

On July 18, 1995, de Cedeno traveled by train from New York City to Richmond, Virginia. According to de Cedeno, his mother boarded the train in Delaware. In Washington, D.C., an agent of the Amtrak Police Department approached them while their train was stopped and, with their consent, searched the two large tweed suitcases which they identified as the only baggage they had with them. Although no contraband was found, the agent later alerted police in Richmond because he thought de Cedeno had shown unusual nervousness during the encounter.

Henrico County Police investigators John Riani and Doug Perry observed de Cedeno and his mother get off the train in Richmond and noticed that, while each was carrying one of the large suitcases, de Cedeno was also carrying a black tote bag and a radio and his mother had a plastic grocery bag. De Cedeno and his mother set their luggage down in two piles about ten feet apart on the sidewalk in front of the terminal. When de Cedeno went back into the terminal to get change, his mother retrieved the black tote bag and put it with her things. The officers approached de Cedeno and identified themselves. De Cedeno agreed to speak with them. He said his mother was just someone he had met on the train and that all the bags had been searched in Washington. When Riani asked if he could search the black bag, de Cedeno showed him the radio, opened it, and loudly stated that it too had been searched. When Riani again asked to look

2

in the black bag, de Cedeno opened the bag himself and began moving objects around, saying, "See, nothing." The investigator knelt beside him, intending to look in the bag, but de Cedeno held up his hands to stop him. Riani moved back and, as de Cedeno pulled a pair of jeans part way out of the bag, a clear plastic corner bag containing white powder fell onto the sidewalk. De Cedeno was then arrested. In the black bag were two bundles of crack totaling 489 grams wrapped in duct tape, a pager, and a cellular phone. The small plastic corner bag contained one gram of heroin.

At the train station, de Cedeno was advised of his <u>Miranda</u>[1] rights. He stated that the black bag and the drugs belonged to him, but asked for an attorney when the investigators challenged his story that he first met Ms. de Cedeno on the train. The interrogation ceased, and de Cedeno and his mother were taken to the Henrico County Public Safety Building.[2] They were seated apart in the same room while Riani completed paperwork. After about twenty minutes, de Cedeno asked if he could sit next to his mother. Riani asked why and de Cedeno responded that he wanted to console her because she did not know anything about the drugs. Riani asked which drugs he meant and a conversation ensued in which de Cedeno stated that a group of Colombians had fronted him the cocaine. He said he had come to Virginia to set up a cocaine distribution operation and owed the Colombians $12,000. He refused to provide information about the Colombians for fear of harm to his family.

De Cedeno unsuccessfully sought suppression of the drugs seized on the ground that he was detained without reasonable suspicion when the investigators approached him outside the terminal in Richmond. The district court did not make specific findings of fact; consequently, we will uphold the denial of the motion to suppress if any reasonable view of the evidence, taken in the light most favorable to the government, will sustain the denial. <u>United States v. Bethea</u>, 598 F.2d 331, 333-34 (4th Cir.), <u>cert. denied</u>, 444 U.S. 860 (1979).

_____

[1] **Miranda v. Arizona**, 384 U.S. 436 (1966).
[2] Ms. de Cedeno was arrested after she said she met de Cedeno on the train, changed her story several times, and finally admitted he was her son. She was not charged in the offense.

The government argues, as it did in the district court, that de Cedeno was not detained when he was approached by the investigators in Richmond, but that the investigators had a reasonable suspicion of wrongdoing which would have supported an investigative stop at that point. A person is not seized within the meaning of the Fourth Amendment when he is merely approached by law enforcement officers in public and asked questions to which he is willing to listen. Florida v. Royer, 460 U.S. 491, 497 (1983). De Cedeno contends that the officers' approach signalled to him that he was the subject of a drug investigation because it followed closely his encounter with Amtrak police in Washington and that, therefore, he did not feel free to leave. We are not persuaded. The officers did nothing before the discovery of the heroin packet to indicate that de Cedeno was not free to decline to answer questions or to terminate the conversation. The district court commented that de Cedeno searched the black bag of his own accord; we agree.

Even if we were to find that de Cedeno was detained briefly by the officers, no Fourth Amendment violation occurred. A limited investigative detention must be supported by reasonable, articulable suspicion that the individual so detained is engaged in criminal activity. United States v. Sokolow, 490 U.S. 1, 7 (1989). In determining whether a basis for reasonable suspicion existed, the court must consider the totality of the circumstances. Id. at 8. The investigators here knew that de Cedeno's demeanor during his encounter with the Amtrak police in Washington had aroused enough concern to elicit a warning to them. They knew that de Cedeno and his mother had asserted that they were carrying only the two tweed bags, but saw them get off the train in Richmond with several other items, principally the black tote bag which de Cedeno had over his shoulder. They saw de Cedeno's mother display protectiveness toward the black bag by placing it with her suitcase when de Cedeno went inside the terminal. Moreover, one of de Cedeno's first statements--that he had just met Ms. de Cedeno on the train--was inconsistent with what he told the Amtrak police. We find that the combination of these factors created a reasonable, articulable suspicion that de Cedeno was involved in criminal activity. The district court did not err in denying his motion to suppress.**3**

_____

**3** De Cedeno does not challenge the denial of his motion to suppress his statements at the Public Safety Building.

4

At sentencing, de Cedeno requested a two-level reduction in his offense level and a sentence below the ten-year mandatory minimum under the safety valve guidelines. USSG §§ 2D1.1(b)(4), 5C1.2.[4] The government argued that he had not complied with the fifth requirement of USSG § 5C1.2 because he had not provided truthful information about the offense. De Cedeno testified at the sentencing hearing that a drug trafficker in New York, known only to him as "Columbia," first asked him to transport a television set to Richmond, then gave him the packet of heroin and the bag containing the crack, the cellular phone, and the pager. His testimony conflicted with his statements to police following his arrest. De Cedeno insisted that his mother knew nothing about the drugs and that he had related everything he knew about the offense. The district court did not find his testimony credible and found that he did not qualify for the reduction under USSG § 2D1.1(b)(4). Given that the district court did not credit de Cedeno's testimony, the court did not clearly err in finding that he had not truthfully provided all the information he possessed about the offense and in denying him the reduction.

The conviction and sentence are therefore affirmed. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

_____

**4** United States Sentencing Commission, Guidelines Manual (Nov. 1995).

5